UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELGEN MANUFACTURING COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MAC ARTHUR CO., et al.,<br><br>Defendants. | Case No. 23-cv-04924-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 11 |

Defendants Mac Arthur Company and James Donnelly (together, "Defendants") have moved to dismiss Plaintiff Elgen Manufacturing Company's ("Elgen") claims for interference with contract and interference with prospective economic advantage. ECF No. 11. The Court will grant the motion.

**I.  BACKGROUND**

   **A.   Factual Background[1]**

Elgen is a New Jersey-based company that distributes and sells heating, ventilation, and air conditioning ("HVAC") and other building products to industry customers. ECF No. 1 ¶¶ 1, 9. Defendant Mac Arthur Company is a Minnesota-based company in the same industry and is Elgen's competitor. *Id.* ¶¶ 5, 10. Defendant John Donnelly, the vice-president of Mac Arthur Company, lives and works in Petaluma, California. *Id.* ¶ 3.

In 2020, Elgen began to expand its business to California. As part of that effort, "it spent considerable sums" on warehouse space, trucks, and new employees. *Id.* ¶ 12. It also "began negotiations" to secure suppliers of the products that it planned to distribute in Northern

---

[1] For the purpose of resolving Defendants' motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

1   California.  *Id.*

2       Around March 2020, one of these product suppliers, Owen Corning, told Elgen "that Elgen
3   would be authorized to distribute certain of Owen Corning's building products in Northern
4   California." *Id.* ¶ 13.  Elgen relied on that agreement as it moved forward with expanding its
5   business in the "highly competitive" region.  *Id.*

6       Around November 2020, an Owens Corning team member told Elgen that Defendants had
7   contacted Owens Corning "complain[ing] about the pricing" at which Elgen was purchasing
8   products from Owens Corning in an attempt to persuade Owens Corning to end its supplier
9   agreement with Elgen.  *Id.* ¶ 14.  Defendants did not sell or seek to sell the same Owens Corning
10  products in the region; they had an existing agreement with another supplier to sell its competing
11  product.  *Id.*

12      Defendants continued contacting Owens Corning regarding its agreement with Elgen.  *See*
13  *id.* ¶ 15.  In late 2021, Owens Corning asked Elgen, "Do you have some time to talk next week
14  with my sales leader . . . and I?  We continue to get some flak from John Donnelly and just want to
15  talk things through with you." *Id.*  Owens Corning then "discontinued its agreement to supply
16  products to Elgen for sale in the Northern California region," succumbing to "Defendants'
17  ongoing pressure tactics, including providing false and misleading information." *Id.*  After Elgen
18  began to search for alternative suppliers, a potential new supplier informed Elgen that it had
19  received a call from Defendants "complaining about pricing issues." *Id.* ¶ 16.

20      Elgen has incurred "significant damage" as a result of these events, including "lost market
21  share, lost customers[,] and millions of dollars in lost sales, as well as lost investment costs in
22  connection with hiring sales representatives, opening facilities, obtaining inventory, freight, and
23  other costs, which are also in excess of a million dollars." *Id.* ¶ 17.

24      Elgen alleges that Defendants wield their "market power, business contacts, and expression
25  of false and misleading information to suppliers" to "drive out competition in the residential and
26  commercial building supply industry in California . . . ." *Id.* ¶ 18.  This conduct is intended to
27  impact consumers "by increasing the cost of building products," which increases prices for
28  downstream industry purchasers and end users "by limiting or removing competitors and price

competition," to the detriment of the "public at large." *Id.* ¶ 19.

### B. Procedural Background

Elgen originally filed suit against Defendants on December 28, 2021, asserting claims for unfair business practices under California Business & Professions Code § 17200; unfair competition under California Business & Professions Code § 16727; tortious interference with contract; and interference with prospective business advantage. *See Elgen Mfg. Co., Inc. v. Mac Arthur Co.*, No. 21-cv-10034, ECF No. 1 ("2021 Case").[2] In the first action, the Court granted in part and denied in part Defendants' motion to dismiss on July 29, 2022, *id.* at ECF No. 28, and permitted Elgen to amend its complaint, *id.* at ECF No. 30. Elgen filed its first amended complaint on September 7, 2022. *Id.* at ECF No. 31.

On March 15, 2023, the parties stipulated to dismiss the action without prejudice under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, and the Court closed the case. *Elgen Mfg. Co., Inc.*, No. 21-cv-10034, ECF No. 39. Elgen now represents that it stipulated to dismissal because it "was undergoing an audit and could not devote the requisite time necessary for the extensive discovery requests," and that it planned to re-file its complaint after the audit concluded. ECF No. 15 at 3 n.1.

On August 3, 2023, Elgen filed a second amended complaint on the closed docket of the 2021 Case. *Elgen Mfg. Co., Inc.*, No. 21-cv-10034, ECF No. 40. On August 16, 2023, Elgen's counsel contacted defense counsel to confirm his continued representation of Defendants and the address to serve the complaint. ECF No. 15-1 at 37. On August 18, 2023, defense counsel responded that because the case had been dismissed and was closed, he currently did not represent Defendants and was not authorized to accept service. *Id.* at 36. On August 21, 2023, Elgen's counsel replied that "[s]ince Plaintiff[s] filed a Second Amended Complaint last week the case is now reopened" and inquired again whether counsel would accept service or Elgen "need[ed] to serve defendants with a copy of the Second Amended Complaint." *Id.*

---

[2] Defendant asks the Court to take judicial notice of certain filings on the docket of the previous action. ECF No. 11-2 ¶¶ 3–6 (citing Fed. R. Evid. 201(b)). Plaintiff does not oppose this request and, in fact, attaches several of those filings as exhibits to its opposition. *See* ECF No. 15-1 to 15-7. The request for judicial notice is granted.

3

1    On September 26, 2023, Elgen initiated this action by filing the same complaint, as a new case, that it previously had filed on the closed 2021 Case docket. ECF No. 1. Elgen asserted the same claims as in its 2021 Case complaint, except without a claim under California Business & Professions Code § 16727. Defendants moved to dismiss Elgen's interference with contract and interference with prospective economic advantage claims on November 21, 2023. ECF No. 11. Elgen filed an opposition on December 15, 2023, ECF No. 15, and Defendants replied on December 22, 2023, ECF No. 16. On May 3, 2024, this action was related to Elgen's original action and reassigned to this Court. ECF Nos. 19–20.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332(a).

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is not "akin to a 'probability requirement,'" but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

4

## IV. DISCUSSION

### A. Applicability of Statute of Limitations

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). The substantive law of the state includes the state's statute of limitations. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citing *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992)).

A two-year statute of limitations applies to Elgen's claims for interference with contract and interference with prospective economic advantage under California law.[3] Cal. Code Civ. Proc. § 339(1). "A tortious-interference claim typically accrues 'at the date of the wrongful act.'" *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (quoting *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974)).

Defendants argue that the relevant causes of action accrued, at the latest, on August 6, 2021, when Owens Corning requested to speak to Elgen about their business agreement due to the "flak" that Owens Corning "continue[d] to get" from Defendants. ECF No. 11 at 5. Elgen does not dispute that the causes of action had accrued by that date. *See* ECF No. 15 at 5. Instead, Elgen argues that it timely filed its claims on August 3, 2023, when it filed a second amended complaint on the closed docket of the action that it had voluntarily dismissed. *Id.* Citing *Rojas v. Cutsforth*, 67 Cal. App. 4th 776 (1998), Elgen explains that the complaint was filed on the wrong docket "inadvertently" and argues that this error was an "insubstantial defect" such that the Court should deem the complaint to have been timely filed. ECF No. 15 at 4–5. Defendants respond that the dismissal of the 2021 Case left the Court without jurisdiction over the parties, so the filing of a complaint on a closed docket had no legal effect. ECF Nos. 11-1 at 6, 16 at 3–5.

The act of filing a notice of dismissal under Rule 41(a)(1) "closes the file." *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001). At that point, "the district

---

[3] Elgen's remaining cause of action for unfair business practices under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, is subject to a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208. Defendants do not move to dismiss that claim.

5

court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them," *id.*, aside from orders on certain "collateral issues," such as costs and attorney's fees, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Voluntary dismissal has the "special, self-executing effect" of "leav[ing] the parties as though no action had been brought." *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1145–46 (9th Cir. 2008) (quoting *Duke Energy Trading & Mktg., L.L.C.*, 267 F.3d at 1049) (internal quotation marks omitted).

Consistent with this clean-slate principle, when plaintiffs have moved to reopen cases that they voluntarily dismissed, many courts have instructed them to file a new complaint instead. *See, e.g.*, *Williams v. Kings Cnty. Dist. Att'y's Off.*, No. 118CV00416ADASKO, 2023 WL 4086445, at *1 (E.D. Cal. June 20, 2023) (denying Plaintiff's request to reopen case because voluntary dismissal "divest[ed] the court of jurisdiction" and noting that "[a]s Plaintiff voluntarily dismissed his complaint without prejudice, he is free to file a new complaint" with the same allegations); *Smith v. Shasta Cnty.*, No. 20-cv-01837-KJM-DMC, 2021 U.S. Dist. LEXIS 70604, at *1–2 (E.D. Cal. Apr. 12, 2021) ("To reopen a case that has been voluntarily dismissed without prejudice under Fed. R. Civ. P. 41(a), it appears the proper course of action is to file a new complaint, not move to reopen the prior action."); *Baxter v. Atl. Care Main Pomona Hosp.*, No. CIV. 13-7876 RBK JS, 2015 WL 715012, at *1 (D.N.J. Feb. 19, 2015) ("As this case was deemed voluntarily dismissed by [plaintiff] pursuant to Rule 41(a), the proper procedure is to require her to file a new civil action rather than reopen an action that was deemed voluntarily dismissed."); *Eggleston v. Daniels*, No. 15-11893, 2017 WL 3977799, at *2 (E.D. Mich. Sept. 11, 2017) ("In order to re-open a case that has been voluntarily dismissed without prejudice, the proper course of action is to file a new complaint, not move to re-open."); *Great Am. Ins. Co. of N.Y. v. Day*, No. CIV.A. DKC 12-2295, 2013 WL 254563, at *1 (D. Md. Jan. 22, 2013) (denying plaintiff's motion to reopen and requiring that a new action be filed where plaintiff previously filed a notice of voluntary dismissal without prejudice). *But cf. Choudhuri v. Specialized Loan Servs. LLC*, No. 19-CV-00028-PJH, 2019 WL 3254130, at *2 (N.D. Cal. July 19, 2019) (denying motion to reopen that sought to add new defendants but stating that plaintiff could either "(1) file a renewed motion to reopen this

6

1    action and attach a complaint that asserts claims against only [the original defendants], or (2) file a
2    new civil action.").

3          Further, because voluntary dismissal "leave[s] the parties as though no action had been
4    brought," *Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d at 1145 (internal
5    quotation marks and citation omitted), neither the filing date of the dismissed action nor the
6    motion to reopen is relevant to the statute of limitations.  A new action following voluntary
7    dismissal must be timely as of the date of *that* action.  *See Lehman v. United States*, 154 F.3d
8    1010, 1015, 1017 (9th Cir. 1998) (affirming the district court's dismissal of an action as time-
9    barred after plaintiffs voluntarily dismissed their initial, timely action and affirming denial of
10   motion to vacate that voluntary dismissal); *see also Welty v. Kmetz*, 2022 WL 2238957, at *2
11   (W.D. Pa. June 22, 2022), *report and recommendation adopted*, 2022 WL 4018319 (W.D. Pa.
12   Sept. 2, 2022) (explaining that plaintiff may not reopen the original case, but must instead
13   commence a new action after voluntary dismissal, "even if Plaintiff's voluntary dismissal without
14   prejudice eventually ripened into a dismissal with prejudice because his claims were time-
15   barred").  In this way, voluntary dismissal contrasts with mechanisms such as a litigation stay or
16   holding a case in abeyance, which suspend proceedings while preserving the original filing date
17   for statute of limitations purposes.  *See Jiminez v. Christensen*, 2020 WL 6701456, at *8 (D. Idaho
18   Nov. 12, 2020) (notifying a pro se petitioner that he may wish to request a stay rather than
19   voluntarily dismiss his case because, "should he choose to voluntarily dismiss his original
20   [p]etition, he will not be able to re-open this case to assert that he filed it within the one-year
21   federal statute of limitations period if [] that time period has expired").

22         Elgen never moved to reopen the prior action.  Instead, it filed an amended complaint on a
23   closed docket over which the Court no longer had jurisdiction, apparently expecting that action to
24   automatically reopen the case.  *See* ECF No. 15-1 at 36; *see also Williams*, 2023 WL 4086445, at
25   *1 (citing *Duke Energy Trading & Mktg., L.L.C.*, 267 F.3d at 1049; *Real Prop. Located at 475
26   Martin Lane, Beverly Hills, CA*, 545 F.3d at 1145).  This error is unlike the "insubstantial"
27   administrative defect in *Rojas*, 67 Cal. App. 4th at 777.  In *Rojas*, a court clerk rejected plaintiff's
28   complaint because she failed to sign a declaration for court assignment and the summons

1   contained the address of the wrong branch of the court.  The court's local rules did not require the

2   signed declaration to be included at the time of filing or provide for rejecting filings that lacked

3   the correct address.  *Id.*  The court held that "[w]here, as here, the defect, if any, is insubstantial,

4   the clerk should file the complaint and notify the attorney or party that the perceived defect should

5   be corrected at the earliest opportunity."  *Id.*  But there wasn't even an "insubstantial" defect—

6   there was no defect at all because plaintiff had not violated any rule.

7         In contrast, Elgen's filing of a new complaint on a closed docket without moving for

8   reopening contravened settled rules of procedure.  *See Williams*, 2023 WL 4086445, at *1; *Smith*,

9   2021 U.S. Dist. LEXIS 70604, at *1–2; *Baxter*, 2015 WL 715012, at *1; *Eggleston*, 2017 WL

10  3977799, at *2; *Day*, 2013 WL 254563, at *1.  *See also Hartford Accident & Indem. Co. v.*

11  *Gonzalez*, 31 Cal. App. 4th 51, 55–56 (1994) (affirming rejection of a petition that lacked a

12  coversheet required by local rules); *Rojas*, 67 Cal. App. 4th at 777 (distinguishing the facts in that

13  case from *Hartford Accident & Indem. Co.* because "in *Hartford* the plaintiff did not even attempt

14  to comply with the local rule").  Moreover, because Elgen filed its amended complaint on a closed

15  docket, the filing was of no legal effect.  Defendant therefore correctly argues that "*Rojas* does not

16  help Elgen."  ECF No. 16 at 3.

17        Because Elgen has now initiated a new action, the filing date of *this* action is used to assess

18  timeliness.  *See, e.g.*, *Lehman*, 154 F.3d at 1015; *Jiminez*, 2020 WL 6701456, at *8.  Because

19  Elgen failed to initiate this action before the statute of limitations expired on August 6, 2023, its

20  claims are time-barred.

21        **B.**    **Equitable Tolling**

22        The Court next examines Elgen's alternative argument that equitable tolling applies.  *See*

23  ECF No. 15 at 5–7.  Equitable tolling is a judicially created doctrine "designed to prevent unjust

24  and technical forfeitures of the right to a trial on the merits when the purpose of the statute of

25  limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied."  *Fanucci*

26  *v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137 (N.D. Cal. 2009) (quoting *McDonald v. Antelope*

27  *Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 99 (2008) (internal quotation marks omitted)).  This

28  doctrine can "suspend or extend a statute of limitations as necessary to ensure fundamental

8

1   practicality and fairness." *Saint Francis Mem'l. Hosp. v. State Dep't of Pub. Health*, 9 Cal.5th
2   710, 719 (2020) (internal citations omitted) (quoting *McDonald*, 45 Cal.4th at 99).

3       "Federal courts must abide by a state's tolling rules, which are integrally related to statutes
4   of limitations." *Albano*, 634 F.3d at 530. For equitable tolling to apply under California law, a
5   plaintiff must establish: (1) timely notice to the defendant; (2) lack of prejudice to the defendant;
6   and (3) reasonable and good faith conduct on the part of the plaintiff. *McDonald*, 45 Cal.4th at
7   102.

### 1. Timely Notice

9       "When considering whether a plaintiff provided timely notice, courts focus on whether the
10  party's actions caused the defendant to be 'fully notified within the [statute of limitations] of
11  plaintiffs' claims and their intent to litigate.'" *Saint Francis Mem'l. Hosp.*, 9 Cal.5th at 726
12  (quoting *Addison v. State of California*, 21 Cal.3d 313, 321 (1978)). Courts evaluating equitable
13  tolling claims "examine each case on its facts to determine whether the defendant received timely
14  notice of the plaintiff's intent to file suit." *Id.* at 727.

15      Elgen argues that it has established timely notice to Defendants because its initial action
16  filed on December 28, 2021, asserted the same claims as this action against the same defendants.
17  Defendants do not argue that they lacked timely notice of the claims against them.

18      Elgen is correct that a prior action asserting the same claims against the same defendants
19  supports a finding that a defendant received the requisite notice. *See Metabyte, Inc. v. Technicolor*
20  *S.A.*, 94 Cal. App. 5th 265, 278 (2023) (holding that defendant was on notice because plaintiff had
21  filed an earlier action in a foreign court with the same basis as the U.S. action). Accordingly,
22  timely notice is satisfied here.

### 2. Lack of Prejudice

24      The second equitable tolling element asks "whether application of equitable tolling would
25  prevent the defendant from defending a claim on the merits." *Saint Francis Mem'l Hosp.*, 9
26  Cal.5th at 728. This factor operates "to prevent the assertion of stale claims by plaintiffs who have
27  failed to file their action until evidence is no longer fresh and witnesses are no longer available."
28  *Addison*, 21 Cal.3d at 317, 319.

Elgen argues that its weeks-late filing did not prejudice Defendants because "Defendant[s] have had sufficient time and notice to prepare to defend against Plaintiff's claims." ECF No. 15 at 6. Defendants do not argue that they have been prejudiced.

The Court finds that no prejudice results from the late filing in this case. Defendants defended the prior action beginning in December 2021 until the voluntary dismissal in February 2023, only a few months before Elgen refiled in the same court in September 2023. *See Saint Francis Mem'l Hosp.*, 9 Cal.5th at 728 (finding that the defendant was not prejudiced because it had defended the claim during the administrative proceedings); *Metabyte, Inc.*, 94 Cal. App. 5th at 279 (finding no prejudice where defendant had the opportunity to prepare a defense).

### 3. Reasonable and Good-Faith Conduct

A plaintiff who seeks to benefit from equitable tolling must establish that its conduct was both "objectively reasonable and subjectively in good faith." *Saint Francis Mem'l Hosp.*, 9 Cal.5th at 729. These requirements reflect the principle that equitable tolling does not "extend to . . . garden variety claim[s] of excusable neglect." *Id.* (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). Rather, it provides "a narrow form of relief in 'unusual circumstances' when justice so requires." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)).

#### a. Reasonableness

The objective reasonableness analysis "focuses not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances." *Id.* "Because Plaintiff was represented by counsel, the Court looks at whether Plaintiff's counsel acted reasonably and in good faith." *Jones v. Cnty. of San Diego*, 2022 WL 3084588 (S.D. Cal. Aug. 2, 2022), *appeal dismissed*, No. 22-55960, 2023 WL 2965598 (9th Cir. Jan. 30, 2023), *and aff'd*, No. 22-55921, 2023 WL 8227562 (9th Cir. Nov. 28, 2023) (citing *Saint Francis Mem'l Hosp.*, 59 Cal. App. 5th 965, 977 (2021)).

To benefit from equitable tolling, Elgen must establish that its counsel's filing the second amended complaint on the closed docket and then belatedly refiling that complaint in a new action was objectively reasonable, but Elgen does not address that point. It focuses instead on the point that its voluntary dismissal of the first action does not preclude a finding of objective

10

reasonableness. ECF No. 15 at 6–7 (citing *McDonald*, 45 Cal.4th at 111). Concerning the errors that led to the late filing of the complaint at issue here, Plaintiff asserts only that the fact that it "filed [the complaint] under the old case number . . . alone is not sufficient" for the Court to find that Elgen behaved unreasonably.

The Court has no quarrel with Elgen's decision to voluntarily dismiss its first case, which is not a factor in the Court's analysis. However, the serious procedural error, followed by an unexplained six-week delay, that resulted in the complaint's late filing was objectively unreasonable. Elgen's counsel should have known that filing an amended complaint on a closed docket would not reopen the case or suffice as a timely filing. Relevant caselaw, such as that discussed above, establishes that initiating a new action is the proper course after voluntary dismissal. Neither the initial misfiling nor the ensuing delay before Elgen initiated the instant case was "fair, proper, and sensible under the circumstances." *Saint Francis Mem'l Hosp.*, 9 Cal.5th at 730. "Equitable tolling applies only in carefully considered situations to prevent the unjust technical forfeiture of causes of action. It does not, as courts have explained, extend to garden variety claims of excusable neglect." *Id.* at 729–30 (citations, quotations, and internal alterations omitted).

Accordingly, the Court finds that Elgen's conduct was not objectively reasonable.

### b. Good Faith

Whether a late filing was subjectively in good faith requires an inquiry into "whether it was the result of an honest mistake or was instead motivated by a dishonest purpose." *Id.*

Elgen asserts that it dismissed the initial action in good faith and that its subsequent errors were inadvertent. ECF No. 15 at 3, 6–7. Defendant contends that Elgen acted in bad faith by dismissing its previous action "simply because it did not want to respond to Defendants' discovery." ECF No. 16 at 2.

The Court finds no indication that Elgen has acted in bad faith. There is no evidence, for example, that Elgen misled Defendants into thinking that it would not seek to litigate the issue again after the parties stipulated to voluntary dismissal. *See Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 926 (1983) (noting that, "if the plaintiff deliberately misled the defendant into

11

believing the second claim would not be filed, that action might be deemed to constitute bad faith"). Because Elgen's conduct was not objectively reasonable, however, equitable tolling is nonetheless unavailable. *See Rasof v. Lyubovny*, 2023 WL 9105650, at *10 (C.D. Cal. Nov. 20, 2023) (citing *Addison*, 21 Cal.3d at 319).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Elgen's second and third causes of action. Dismissal is with prejudice because amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (holding that dismissal for failure to state a claim should be with leave to amend "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts").

**IT IS SO ORDERED.**

Dated:  August 16, 2024



JON S. TIGAR
United States District Judge